IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BETTE WARTER, as PERSONAL )
REPRESENTATIVE of the ESTATE )
of her son, DOUGLAS MATTHEW )
HALL and for the benefit of his )
surviving minor children, )
)
    Plaintiff, )
)
v. ) NO. 3:14-cv-01981
) JUDGE CAMPBELL
VOLUNTEER TAXI INC. and )
ZEKARIAS ABEBE, )
)
    Defendants. )

MEMORANDUM

Pending before the Court is Defendant Volunteer Taxi Inc.'s Motion for Summary Judgment. (Docket No. 52.) For the reasons stated herein, Defendant's Motion is GRANTED.

INTRODUCTION

Defendant is a Nashville-based taxicab company. Plaintiff is a citizen of Florida and the mother and personal representative of the estate of Douglas Matthew Hall, who was a passenger in one of Defendant's taxis in the early hours of Sunday, October 20, 2013. At the time, Hall's driver, Zekarias Abebe, was a driver for and shareholder of Defendant. Abebe has stated that he picked up Hall, as well as two of Hall's friends, John Rush and Johnny Baxter, from the "bar district" in downtown Nashville shortly before 2:30 a.m. (Docket No. 52-1 at 1.) According to an affidavit by Abebe, the three men "seemed to be in very good spirits and having a good time, laughing, joking, and talking with each other." (*Id.*) Abebe concedes that Hall and his friends appeared to have been drinking, but notes that it is common for passengers in that part of the city to be intoxicated in the

early hours of Sunday morning. (*Id.* at 2.) Abebe recounts driving the men about ten minutes to the La Quinta Inn where they were staying, and that during the course of the ten minutes, the passengers seemed to become quieter. Abebe claims that it is not uncommon for intoxicated passengers to be animated or talkative at first and then quiet down over the course of a taxi ride. *(Id.)* When Abebe's taxi arrived at the hotel, Rush and Baxter got out of the vehicle, but Hall did not. Abebe has described Hall as appearing, at this point, to be asleep. Rush and Baxter tried to awaken Hall, first verbally, then physically, then by splashing water on his face. Hall did not wake up. Abebe claims that, prior to its becoming apparent at the hotel that Hall was unconscious, there had been no indication that he was anything but an ordinary intoxicated passenger. (*Id.*)

At some point shortly after their arrival, the group was approached by La Quinta security guard Joseph Seay. Seay's written shift report first describes his encounter with Abebe's taxi and its passengers as follows:

> 0238—Taxi Cab (Volunteer Cab Co.) brought in 3 guest (all impaired 1 passed out in the floor of taxi, other drunk in back seat[)]. 1 guest (John Rush?) we think, appeared sober trying to awaken his partner in the floor. No success, s/o called EMS (Metro FD) at this time, advised dispatch to [get] an ambulance in route ASAP. Subject was non-responsive at this time (still breathing w/ sputum discharge coming from nose and mouth[)]. S/o advised to keep the subject on his side. S/o visibly witnessed subject in the floor of van breathing. Prior to arrival of EMS Metro Fire Dept the man stopped breathing.

(Docket No. 56-1.) Seay's report goes on to describe Rush performing CPR on Hall, who was "<u>not breathing</u> and choking on sputum it appeared." (*Id.*) Emergency medical personnel arrived and transported Hall to Summit Medical Center. After being eventually moved to hospice care, Hall passed away on November 13, 2013, allegedly due to anoxic encephalopathy caused by a lack of oxygen to his brain on the night in question. (Docket No. 19 at ¶¶ 13–16.) Hall's medical records suggest that he began choking while in Abebe's taxi, but do not indicate the source for that assertion

2

or at what point during the ride or after the taxi was parked that the choking began. (Docket No. 56-2 at 2; Docket No. 56-3 at 2, 4.)

Plaintiff sued Defendant in her capacity as representative of Hall's estate, alleging that Hall's death was the ultimate result of Defendant's breach of its duty of care as a common carrier. (Docket No. 1 at ¶ 30.) She later amended her Complaint to include Abebe as a defendant (Docket No. 19), but the Court dismissed all claims against Abebe as barred by the relevant statute of limitations (Docket No. 47). Plaintiff argues that Defendant is both vicariously liable for Abebe's actions on the night in question and that Plaintiff is liable based on its negligent hiring, supervision, and retention of Abebe. Defendant filed the instant motion for summary judgment, disputing both theories of liability.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). After the movant has satisfied this initial burden, the nonmoving party must show that a "rational trier of fact [could] find for the non-moving party," and that therefore there is "a 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 252 (1986).

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson*, 477 U.S. at 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## VICARIOUS LIABILITY

In Tennessee, "a principal may be held vicariously liable for the negligent acts of its agent when the acts are within the actual or apparent scope of the agent's authority." *Abshure v. Methodist Healthcare–Memphis Hosps.*, 325 S.W.3d 98, 105 (Tenn. 2010). To establish the elements of a claim for negligence, a plaintiff must show (1) a duty of care owed by the defendant to the injured party; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause. *Green v. Roberts*, 398 S.W.3d 172, 176–77 (Tenn. Ct. App. 2012). Plaintiff claims that Defendant, through its agent Abebe, negligently caused or exacerbated Hall's injuries by failing to exercise its duty as a common

4

carrier to take corrective action related to Hall's medical condition sooner. Specifically, Plaintiff posits that Abebe should have performed first aid on Hall, called for emergency assistance earlier, or taken Hall directly to the hospital. Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish that Defendant had or breached any relevant duty, or that the alleged breach was either an actual or proximate cause of Hall's injuries.

Defendant does not appear to dispute that it, as an operator of taxicabs, is a common carrier[1] subject to a heightened duty of care under Tennessee law. *See Wishone v. Yellow Cab Co.*, 97 S.W.2d 452, 453 (Tenn. Ct. App. 1936) ("[A] taxicab company which holds itself out as ready to receive and transport all who apply for passage and are ready to pay the fare required may be said to be a common carrier of passengers and therefore held to the exercise of the highest degree of care consistent with the proper transaction of its business . . . ."). Nor does Defendant dispute the general proposition that, pursuant to that heightened standard of care, common carriers "must exercise the utmost diligence, skill, and foresight, to provide for their passengers' safety"—albeit in a manner "[c]onsistent with the practical conduct of their business." *White v. Metro. Gov't of Nashville & Davidson Cty.*, 860 S.W.2d 49, 52 (Tenn. Ct. App. 1993) (citations omitted). Defendant argues instead that even its heightened standard of care does not impose a duty to ascertain that a passenger is suffering from a medical impairment or condition that is not readily apparent, and that Hall's condition did not become apparent until the taxi had arrived at the hotel, at which point the various

---

[1] "A common carrier of passengers has been defined as 'one who undertakes for hire to carry all passengers indifferently who may apply for passage.'" *Nichols v. TransCor Am., Inc.*, No. M2001-01889-COA-R9CV, 2002 WL 1364059, at *3 (Tenn. Ct. App. June 25, 2002) (quoting *Roberts v. Knoxville Transit Lines*, 259 S.W.2d 883, 888 (Tenn. Ct. App. 1952)).

individuals present took appropriate steps to address Hall's condition and get him the medical care he required.

Tennessee courts have suggested that, in addition to the duties owed to ordinary passengers, "[c]ommon carriers will be held to a higher standard of care with regard to aged or infirm passengers *whose age or infirmity is apparent from their appearance*." *White*, 860 S.W.2d at 52 (citing *Memphis St. Ry. Co. v. Shaw*, 75 S.W. 713, 714–15 (1903); *S. Ry. Co. v. Mitchell*, 40 S.W. 72, 73 (1896)) (emphasis added). The Tennessee Court of Appeals has also written, however, that unless a common carrier is somehow placed on notice of a patient's condition, the carrier has "no duty to engage in an independent assessment requiring specialized skill or experience in order to discover a latent, non-apparent infirmity." *Gibson v. Metro Cmty. Care Home, Inc.*, No. W2008-02417-COA-R3-CV, 2009 WL 4801507, at *5 (Tenn. Ct. App. Dec. 15, 2009). By Abebe's own admission, he was, at all times, on notice that his passengers were likely intoxicated. Plaintiff has not identified any cases, however, to suggest that a passenger's mere apparent intoxication gives rise to a duty to investigate whether the passenger is at risk of a more serious alcohol-related condition.

Rather, Plaintiff argues that there is a disputed issue of material fact regarding when Hall's more severe medical condition became readily apparent. Plaintiff premises her argument on two pieces of evidence: Seay's report that describes Hall passed out in the floor of the taxi and mentions Hall's visible sputum; and Hall's medical records suggesting that he began to choke while in the taxi. Seay's report, however, is based entirely on observations that occurred after the taxi had already arrived at the hotel. Seay provides no insight into how or when Hall ended up on the floor or when his sputum became visible. Hall's medical records similarly shed little light on the situation, because they provide no information about when, during his time in the taxi, Hall's

6

choking supposedly began or how it presented aurally or visually. Neither document, then, actually contradicts Abebe's account.

Since the Plaintiff has failed to identify evidence showing that Hall's distress was apparent before the taxi arrived at the hotel, she can only recover if she identifies some actionable breach of duty by Abebe in the ensuing minutes. To that end, Plaintiff suggests that Abebe "was busy getting paid and asking for a tip instead of attending to his passenger's medical crisis." (Docket No. 55 at 5.) As evidence, she cites a receipt that appears to show that Abebe received payment for the taxi ride at 2:43 a.m. (Docket No. 55-4), two minutes after emergency medical personnel arrived and seven minutes before the ambulance left with Mr. Hall, according to EMS records. (Docket No. 56-2 at 3.) Plaintiff offers no explanation, though, for what Abebe could or should have been doing to assist Hall once trained emergency professionals were already on the scene. Plaintiff, in short, has failed to identify any evidence that could lead a jury to conclude that Abebe's decision to wait for, then defer to, emergency medical personnel was either inappropriate or a cause in fact of the severity of Hall's injuries. Because Plaintiff cannot establish the elements of actionable negligence by Abebe, she cannot establish vicarious liability by Defendant. Defendant is therefore entitled to summary judgment on this theory of recovery.

## NEGLIGENT HIRING, SUPERVISION, AND RETENTION

Tennessee courts recognize that a cause of action may be raised against an employer based on the employer's negligence in the selection and retention of employees and independent contractors. *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (citations omitted). A plaintiff in Tennessee may recover for negligent hiring of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge

7

of the employee's unfitness for the job. *Id.* (citations omitted). Plaintiff claims that Abebe was unfit and untrained for his job as a taxi driver and that his unfitness and lack of training resulted in his mishandling of the situation with Hall. Defendant has offered an affidavit of Defendant's president, Fasil Belihu, asserting that Abebe was subject to a "rigorous program of background checks, criminal history checks, medical exams, commercial licensure, [and] ongoing education and training." (Docket No. 52-3 at 1.)

Plaintiff has not identified any specific way in which Abebe's qualifications or training were deficient, other than merely reiterating her argument that he behaved improperly on the night of Hall's injuries. Such threadbare allegations are not sufficient to establish a question of fact appropriate for a jury with regard to whether Abebe was negligently hired, retained, supervised or trained—let alone whether that alleged negligence actually caused Hall's injuries. Because Plaintiff has offered no specific account or evidence of how Defendant erred in its hiring, retention, or training of Abebe, Defendant is entitled to summary judgment on this theory of liability as well.

## CONCLUSION

For these reasons, Defendant Volunteer Taxi Inc.'s Motion for Summary Judgment (Docket No. 52.) is GRANTED.

An appropriate order is filed herewith.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE